IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

YELLOWPAGES.COM, LLC,                        :
                                             :
                          Plaintiff,         :
vs.                                          : CIVIL ACTION
                                             :
JACQUELINE ELDRED-SMITH AND                  : NO. _____ -2009(____)(____)
BRIDGET ONDECK,                              :
                          Defendants.        :
                                             :
                                             :
                                             :

## COMPLAINT IN EQUITY

Plaintiff, YellowPages.com, LLC ("YellowPages.com"), by and through its undersigned

counsel, Stark & Stark, P.C., by way of Complaint against Defendants, Jacqueline Eldred-Smith

("Ms. Eldred-Smith") and Bridget Ondeck ("Ms. Ondeck"), alleges as follows:

### PARTIES

1.      YellowPages.com, LLC is a Delaware Limited Liability Company with its principal

place of business located at 611 N. Brand Boulevard, Fifth Floor, Glendale, California 91203.

2.      YellowPages.com is a company specializing in online yellow pages and is engaged

in the business of selling online advertisements through a variety of products and services, which

are displayed on YellowPages.com's website, advertising services and products that utilize search

engines such as Google, Yahoo, etc., and website creation and management. YellowPages.com sells

its products and services to a national market, servicing the continental United States through

seventeen (17) strategically placed offices and a host of distribution and sale networks. As a result,

YellowPages.com has, through the expenditure of time and resources, developed significant

1

confidential and proprietary trade secret information critical to its business operations.

3.     Upon information and belief, Ms.  Eldred-Smith is an adult individual and resident of the Commonwealth of Pennsylvania with an address located at 281 Woods Edge Place, Langhorne, Pennsylvania 19047.

4.     Upon information and belief, Ms.  Ondeck is an adult individual and resident of the Commonwealth of Pennsylvania with an address located at 12923 Medford Rd Philadelphia, PA 19154.

## JURISDICTION AND VENUE

1.     This Court has original jurisdiction over this matter pursuant to 28 U.S.C. §1332(a) because the amount in controversy, exclusive of interest and costs, exceeds $75,000.00 and is between citizens of different states.

2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).

## FACTUAL BACKGROUND
### (Employment with YellowPages.com)

**A.     Ms.  Eldred-Smith**

1.     In or about April 2006, Ms. Eldred-Smith commenced employment with YellowPages.com in the position of Account Manager.

2.     As a condition of her employment with YellowPages.com, Ms.  Eldred-Smith was required to agree to be bound by YellowPages.com's policies regarding confidential and proprietary information.

3.     On April 24, 2006, Ms.  Eldred-Smith executed YellowPages.com's "At Will Employment, Proprietary Information, Invention Assignment, and Arbitration Agreement ("PIIA").

2

A copy of the PIIA executed by Ms. Eldred-Smith is attached hereto as **Exhibit "A."**

4.   The PIIA provides, in relevant part,

(1) ...

(2)   *Confidential Information*

A.   *Company Information.* I agree at all times during the term of my employment and thereafter, to hold in strictest confidence, and not to use, except for the benefit of [YellowPages.com] or to disclose to any person, firm or corporation without written authorization of the Board of Directors of [YellowPages.com], any Confidential Information of [YellowPages.com], except under a non-disclosure agreement duly authorized and executed by [YellowPages.com]. I understand that "Confidential Information" or "Proprietary Information" means any non-public information that relates to the actual or anticipated business or research and development of [YellowPages.com], technical data, trade secrets or know-how, including, but not limited to, research, product plans or other information regarding [YellowPages.com's] products or services and markets therefor, **customer lists and customers (including, but not limited to, customers of [YellowPages.com] on whom I called or with whom I became acquainted during the term of my employment)**, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, **marketing, finances** or other business information. (Emphasis added)

...

(5)   *Returning Company Documents.* I agree that, at the time of leaving the employ of [YellowPages.com], I will deliver to [YellowPages.com] (and wiull not keep in my possession, recreate, or deliver to anyone else) any and all...records, notes, reports, proposals, lists, correspondence...materials...other documents or property...otherwise belonging to [YellowPages.com].

...

(9)

...

(D)   *Availability of Injunctive Relief.* BOTH PARTIES AGREE THAT ANY PARTY MAY PETITION A COURT FOR INJUNCTIVE RELIEF...BOTH PARTES UNDERSTAND THAT ANY BREACH OR THREATENED BREACH OF SUCH AGREEMENT WILL CAUSE IRREPARABLE HARM AND THAT MONEY DAMAGES WILL NOT PROVIDED AN ADEQUATE REMEDY THEREFOR

AND BOTH PARTIES HEREBY CONSENT TO THE ISSUANCE OF AN INJUNCTION...THE PREVAILING PARTY SHALL BE ENTITLED TO RECOVER REASONABLE COSTS AND ATTORNEYS FEES.

5.　　Ms. Eldred-Smith was assigned to YellowPages.com's offices located in Conshohocken, Pennsylvania.

6.　　Ms. Eldred-Smith's annual compensation, which included salary and bonus has remained at an amount of $50,000.00 since her commencement of employment.

7.　　Ms. Eldred-Smith's responsibilities as Account Manager, primarily included monitoring, assisting, and interacting with YellowPages.com's customers on a range of customer issues, for which she received training from YellowPages.com.

8.　　In her role as Account Manager , Ms. Eldred-Smith had access to and worked with YellowPages.com's Confidential Information, which included sales training materials, customer lists, sales leads lists, and customer contracts that detailed the various products purchased by each customer.

**B.　Ms. Ondeck**

9.　　In or about November 2006, Ms. Ondeck commenced employment with YellowPages.com in the position of Account Executive.

10.　　As a condition of her employment with YellowPages.com, Ms. Eldred was required to agree to be bound by YellowPages.com's policies regarding Confidential and Proprietary information as those terms are defined in the PIIA.

11.　　On November 13, 2006, Ms. Ondeck executed YellowPages.com's PIIA. A copy of the PIIA executed by Ms. Ondeck is attached hereto as **Exhibit "B."**

4

12.     Ms. Ondeck was assigned to YellowPages.com's offices located in Conshohocken, Pennsylvania.

13.     During the course of her employment with YellowPages.com, Ms. Ondeck held several management positions including Training Manager, District Sales Manager, and General Sales Manager.

14.     In her supervisory capacities, Ms. Ondeck was responsible for managing certain YellowPages.com's sales offices, overseeing and training of account executives, review of daily reports, commission reviews, and strategic targeting of existing and prospective customers.

15.     Between 2006 and 2009, Ms. Ondeck's compensation, which included salary and bonus was increased from approximately $52,000.00 to greater than $92,000.00.

16.     Based on her supervisory positions, and the responsibilities associated therewith, including, but not limited to, the training of account executives and strategic targeting of existing and prospective customers, Ms. Ondeck was often privy to YellowPages.com's Confidential Information, which included but was not limited to, customer and sales-leads lists, training materials, and marketing and sales strategies.

18.     During the course of their respective employment and in the performance thereof, Ms. Eldred-Smith and Ms. Ondeck gained extensive knowledge of YellowPages.com's Confidential Information regarding its sales activities, operations, training, objectives, and prospective and current customers. Such information is not available to the public, and was developed by YellowPages.com through the investment of significant expense and time.

5

**(Theft/Misappropriation of Confidential Information)**

A.     **Ms. Eldred-Smith**

19.     On or about February 3, 2009, Ms. Eldred-Smith went on temporary leave due to medical reasons.

20.     During this time period, Ms. Eldred-Smith maintained contact with YellowPages.com's Human Resources Department ("HR") regarding her timetable regarding the possibility of her return from leave.

21.     In maintaining contact with HR, Ms. Eldred-Smith led YellowPages.com's HR to believe that she intended to return to YellowPages.com once her leave of absence concluded.

22.     Notwithstanding her representations to HR, on Sunday, May 3, 2009, at 10:25:11 PM, Ms. Eldred-Smith sent an e-mail to her direct supervisor, Dominic Brogden, advising him that she was resigning her employment with YellowPages.com due to her medical condition.

23.     On May 4, 2009, the day after she purportedly resigned, Ms. Eldred-Smith contacted HR and requested an accommodation as she claimed she was still unable to return based on her medical condition.

24.     Upon information and belief, Ms. Eldred-Smith's actions vis-a-vis HR were purposely undertaken to avoid having her access removed to her YellowPages.com e-mail account, thereby allowing her additional time to steal and/or misappropriate YellowPages.com's Confidential Information.

25.     YellowPages.com has recently learned that, prior to May 3, 2009, Ms. Eldred-Smith was forwarding e-mails from her YellowPages.com e-mail account, jeldred@attinteractive.com, to her personal e-mail account, jackie.eldred@yahoo.com.

6

26. Between April 24, 2009 and prior to 10:25:11 PM on May 3, 2009, Ms. Eldred-Smith forwarded over TWO HUNDRED (200) e-mails to her personal e-mail account, which included attachments containing YellowPages.com's Confidential Information.[1]

27. The great majority of e-mails forwarded by Ms. Eldred-Smith occurred during the period of May 1, 2009 to May 4, 2009.

28. The attachments consisted of, *inter alia*, Excel spreadsheets, powerpoint presentations, Word documents, the subject matter of which included YellowPages.com's sale figures, customer and sales leads lists, sales training techniques, and commission figures among others.

29. In addition, the attachments also included copies of current agreements with YellowPages.com's customers, which upon information and belief were stolen and or misappropriated by Ms. Eldred-Smith for dual purpose of targeting and soliciting said customers as well as interfering with the contractual relationship of YellowPages.com.

30. Notwithstanding her resignation at 10:25:11 PM, Sunday night, May 3, 2009, Ms. Eldred-Smith, with full knowledge that she was no longer an employee of YellowPages.com, continued to access YellowPages.com's e-mail system, using her login and password, for a period of time extending until May 12, 2009 forwarded over EIGHTY (80) additional e-mails to her personal e-mail account.

31. Consistent with her pre-resignation practice, the more than EIGHTY (80) e-mails

---

[1] Due to the highly confidential and proprietary nature of the materials and information referenced in this Complaint, Plaintiff, YellowPages.com has not attached copies of same hereto. Rather, YellowPages.com has attached to the Affidavit of Patrick Eastburn a series of screenshots depict the e-mails and their attachments which were stolen by Ms. Eldred-Smith. Furthermore, upon the acceptance and assignment of this matter to a District Judge, YellowPages.com's Confidential Information referenced herein will be submitted to the Court for an *in camera* review.

forwarded to her personal e-mail account, included multiple attachments containing YellowPages.com's Confidential Information.

32.     Ms. Eldred-Smith's actions regarding YellowPages.com's Confidential Information were improper, unlawful, constitute theft and/or misappropriation of YellowPages.com's trade secrets, and violated the terms of the PIIA.

33.     Upon information and belief, Ms. Eldred-Smith is currently working for Local Internet Traffic, a direct competitor of YellowPages.com.

34.     Upon information and belief, as a result of Ms. Eldred-Smith's position with Local Internet Traffic, she, through her current employer is competing with YellowPages.com.

35.     Upon information and belief, Ms. Eldred-Smith is using YellowPages.com's Confidential Information, which she improperly and unlawfully obtained, for the purposes of competing with YellowPages.com and on several occasions has contacted existing customers of YellowPages.com and through the use of YellowPages.com's Confidential Information was able to convince said customers to cancel their contracts with YellowPages.com.

36.     As a result of Ms. Eldred-Smith's actions, YellowPages.com took action to ascertain whether such improper and unlawful activity was ongoing with other employees.

**B.    Ms. Ondeck**

37.     YellowPages.com's investigation recently disclosed that between March 16, 2009 and April 7, 2009 Ms. Ondeck forwarded more than twenty (20) e-mails from her YellowPages.com e-mail account, Bo6335@att.com, to her personal e-mail account, Babst34@msn.com.

38.     Included in those e-mails were powerpoint presentations regarding sales strategies, cold call strategies, and YellowPages.com's software/program training. In addition, the attachments

included marketing materials for online advertising, sales reporting and tracking tools, financial data regarding monthly sales for certain offices and commissions earned by certain account executives.

39.    Ms. Ondeck's actions regarding YellowPages.com's Confidential Information were improper, constitute theft and/or misappropriation of trade secrets, and violated the PIIA.

### FIRST COUNT
**(Theft/Misappropriation of Trade Secrets under 18 PaCS 5301 et seq. or in the Alternative under the California Uniform Trade Secrets Act Cal Civ. Code 3426 et seq.)**
**(Jacqueline Eldred-Smith and Bridget Ondeck)**

40.    YellowPages.com repeats and re-alleges the allegations contained in paragraphs through 39 of the Compliant as though same were set forth at length herein.

41.    Under Pennsylvania law, customer lists and sales leads lists, training materials, and financial information including sales and commissions figures, among other things, are protected trade secrets under the Uniform Trade Secrets Act, 12 Pa.C.S. § 5301, et seq.

42.    In the alternative, under California law, customer lists and sales leads lists, training materials, and financial information including sales and commissions figures, among other things, are protected trade secrets under the California Uniform Trade Secrets Act.

44.    As set forth above, Defendants willfully and maliciously misappropriated YellowPages.com's Confidential Information including customer lists and sales leads lists, training information, and financial information which includes sales and commissions materials, among other things.

45.    YellowPages.com's customer and sales leads lists, training information, and financial information which includes sales and commissions materials is not published to competitors of YellowPages.com, and Defendants agreed, at the time of their hire, that such information was

confidential and proprietary under the PIIA.

46.     The customer lists and sales leads lists, training materials, and financial information including sales and commissions figures, among other things, is not easily acquirable or duplicated by persons not employed by YellowPages.com.

47.     As a result of the improper and unlawful conduct of Defendants, YellowPages.com has suffered and will continue to suffer irreparable harm.

48.     Pursuant to Pennsylvania law, YellowPages.com is entitled to injunctive relief as well as an award of reasonable attorneys fees, expenses and costs in an amount to be determined.

## SECOND COUNT
### (Breach of Duty of Loyalty Under Pennsylvania Law and in the Alternative Under California Law)
### (Jacqueline Eldred-Smith and Bridget Ondeck)

49.     YellowPages.com repeats and re-alleges the allegations contained in paragraphs through 48 of the Compliant as though same were set forth at length herein.

50.     Pursuant to Pennsylvania law, all employees owe their employer a duty of loyalty to act exclusively for the benefit of the employer, and employees must act with the utmost good faith in the furtherance and advancement of the interest of the employer.

51.     In the alternative, pursuant to California law, all employees owe their employer a duty of loyalty to act exclusively for the benefit of the employer, and employees must act with the utmost good faith in the furtherance and advancement of the interest of the employer

52.     As set forth above, while working for YellowPages.com, Defendants misappropriated YellowPages.com's customer and sales leads lists, training information, and financial information that includes amount of sales and commissions.

10

53.     YellowPages.com has been severely and irreparably harmed and will continue to be irreparably harmed as a result of this improper and unlawful conduct.

### THIRD COUNT
### (Breach of Contract PIAA)
### (Jacqueline Eldred-Smith and Bridget Ondeck)

54.     YellowPages.com repeats and realleges the allegations contained in paragraphs through 53 of the Compliant as though same were set forth at length herein.

55.     As a condition of their employment, Defendants agreed to be bound by the terms of the PIIA.

56.     By engaging in the improper and unlawful conduct as set forth above, Defendants breached their obligations under the PIIA.

57.     Defendants failure to comply with their obligations under the PIIA constitutes a breach of contract under either Pennsylvania or California law.

### FOURTH COUNT
### (Conversion)
### (Jacqueline Eldred-Smith and Bridget Ondeck)

58.     YellowPages.com repeats and re-alleges the allegations contained in paragraphs through 57 of the Compliant as though same were set forth at length herein.

59.     As set forth above, Defendants stole, and failed to return various property belonging to YellowPages.com, including Confidential Information amounting to trade secrets.

60.     This Confidential Information includes customer lists and sales leads lists, training information, and financial information that includes amounts of sales and commissions.

61.     YellowPages.com has been severely and irreparably harmed and will continue to be

11

irreparably harmed as a result of this improper and unlawful conduct.

## FIFTH COUNT
### (Tortious Interference with Contractual Relations Under Pennsylvania Law or in the Alternative Under California Law)
### (Jacqueline Eldred-Smith)

62.    YellowPages.com repeats and re-alleges the allegations contained in paragraphs through 61 of the Compliant as though same were set forth at length herein.

63.    Upon information and belief, Ms.  Eldred-Smith stole and/or misappropriated Confidential Information as described herein for the purposes of targeting and soliciting YellowPages.com's customers.

64.    Upon information and belief, Ms.  Eldred-Smith has used the stolen Confidential Information in her efforts to convince current YellowPages.com's customers to cancel their contracts with YellowPages.com.

65.    Upon information and belief, Ms.  Eldred-Smith has entered into contracts with YellowPages.com's customers on behalf of her new employer, whereby the same or similar products are offered.

66.    By engaging in such unlawful and improper conduct, Ms.  Eldred-Smith has interfered and will continue to interfere with the contractual relationships of YellowPages.com and its customers.

## SIXTH COUNT
### (Tortious Interference with Prospective Economic Advantage Under Pennsylvania Law or in the Alternative Under California Law))
### (Jacqueline Eldred-Smith)

67.    YellowPages.com repeats and re-alleges the allegations contained in paragraphs through 66 of the Compliant as though same were set forth at length herein.

68. Ms. Eldred-Smith's actions, including the theft of Confidential Information, including customer lists, sales leads lists, and copies of contracts between YellowPages.com and its customers was undertaken with the purposes of targeting and soliciting YellowPages.com's customers and prospective customers.

69. By engaging in such unlawful and improper conduct, Ms. Eldred-Smith has interfered and will continue to interfere with the prospective economic advantage of YellowPages.com vis-vis its current customers to enter into new contracts as well as to enter into contracts with companies and entities that are currently targeted by YellowPages.com.

**WHEREFORE**, Plaintiff, YellowPages.com, LLC, respectfully requests judgment be entered in its favor and against Defendants, Jacqueline Eldred-Smith and Bridget Ondeck, as follows:

(A) Requiring Jacqueline Eldred-Smith to return any and all materials, including but not limited to Confidential Information, belonging to YellowPages.com;

(B) Requiring Bridget Ondeck, to return any and all materials, including but not limited to Confidential Information, belonging to YellowPages.com;

© Enjoining Jacqueline Eldred-Smith from disclosing any Confidential Information to any person, including, but not limited to, competitors of YellowPages.com;

(D) Enjoining Bridget Ondeck from disclosing any Confidential Information to any person, including, but not limited to, competitors of YellowPages.com;

(E) Requiring Jacqueline Eldred-Smith and Bridget Ondeck to produce copies of all e-mails sent, forwarded, or copied to their personal e-mails accounts and or PDA's and/or sent, forwarded or copied to competitors of YellowPages.com;

13

(F)     Requiring Jacqueline Eldred-Smith and Bridget Ondeck to pay YellowPages.com's attorneys fees and costs  associated with this application;

(G)     Enjoining Jacqueline Eldred-Smith from contacting, soliciting, and/or targeting any and all customers of YellowPages.com;

(H)     Enjoining Bridget Ondeck from contacting, soliciting, and/or targeting any and all customers of YellowPages.com and

(I)     Granting such other relief as this Court deems equitable and just.


                                        BY:     /s/ Michael J.  Fekete
Dated: June 15, 2009                            MICHAEL J. FEKETE, ESQUIRE
                                                PA Bar No. 88506
                                                STARK & STARK PC
                                                40 Lake Center executive Park
                                                401 Route 73 North, Suite 130
                                                Marlton, New Jersey 08053
                                                (856) 874-4443 (Phone)
                                                (856) 874-0133 (Facsimile)
                                                mfekete@stark-stark.com
                                                Attorney for Plaintiff, YellowPages.com, LLC

## DESIGNATION OF TRIAL COUNSEL

**PLEASE TAKE NOTICE** that Michael J. Fekete, Esquire is hereby designated as trial counsel for Plaintiff, YellowPages.com, LLC, in the above-captioned litigation for the firm of

STARK & STARK, P.C.

BY:     /s/ Michael J.  Fekete

Dated: June 15, 2009                  MICHAEL J. FEKETE, ESQUIRE

## CERTIFICATION OF NO OTHER PARTIES OR ACTIONS

I hereby certify to the best of my knowledge that the above captioned action is not subject to any other action pending in any other court or the subject of a pending arbitration proceeding, nor should other parties be joined in this action.

STARK & STARK, P.C.

BY:     /s/ Michael J.  Fekete

Dated: June 15, 2009                  MICHAEL J. FEKETE, ESQUIRE

**EXHIBIT A**

# YELLOWPAGES.COM LLC
## AT WILL EMPLOYMENT, PROPRIETARY INFORMATION,
## INVENTION ASSIGNMENT,
## AND ARBITRATION AGREEMENT

As a condition of my employment with **YellowPages.com LLC**, its subsidiaries, affiliates, successors or assigns (together the "Company"), and in consideration of my employment with the Company and my receipt of the compensation now and hereafter paid to me by Company, I agree to the following, effective _4/24_, 2006:

1.    *At-Will Employment.*

I UNDERSTAND AND ACKNOWLEDGE THAT MY EMPLOYMENT WITH THE COMPANY IS FOR AN UNSPECIFIED DURATION AND CONSTITUTES "AT-WILL" EMPLOYMENT. I ALSO UNDERSTAND THAT ANY REPRESENTATION TO THE CONTRARY IS UNAUTHORIZED AND NOT VALID UNLESS OBTAINED IN WRITING AND SIGNED BY THE PRESIDENT OF THE COMPANY. I ACKNOWLEDGE THAT THIS EMPLOYMENT RELATIONSHIP MAY BE TERMINATED AT ANY TIME, WITH OR WITHOUT GOOD CAUSE OR FOR ANY OR NO CAUSE, AT THE OPTION EITHER OF THE COMPANY OR MYSELF, WITH OR WITHOUT NOTICE.

2.    *Confidential Information.*

A.    *Company Information.* I agree at all times during the term of my employment and thereafter, to hold in strictest confidence, and not to use, except for the benefit of the Company, or to disclose to any person, firm or corporation without written authorization of the Board of Directors of the Company, any Confidential Information of the Company, except under a non-disclosure agreement duly authorized and executed by the Company. I understand that "Confidential Information" or "Proprietary Information" means any non-public information that relates to the actual or anticipated business or research and development of the Company, technical data, trade secrets or know-how, including, but not limited to, research, product plans or other information regarding Company's products or services and markets therefor, customer lists and customers (including, but not limited to, customers of the Company on whom I called or with whom I became acquainted during the term of my employment), software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances or other business information. I further understand that Confidential Information does not include any of the foregoing items which have become publicly known and made generally available through no wrongful act of mine or of others who were under confidentiality obligations as to the item or items involved or improvements or new versions thereof.

B.    *Former Employer Information.* I agree that I will not, during my employment with the Company, improperly use or disclose any proprietary information or trade secrets of any former or concurrent employer or other person or entity and that I will not bring onto the premises of the Company any unpublished document or proprietary information belonging to any such employer, person or entity unless consented to in writing by such employer, person or entity.

C.     *Third Party Information.* I recognize that the Company has received and in the future will receive from third parties their confidential or proprietary information subject to a duty on the Company's part to maintain the confidentiality of such information and to use it only for certain limited purposes. I agree to hold all such confidential or proprietary information in the strictest confidence and not to disclose it to any person, firm or corporation or to use it except as necessary in carrying out my work for the Company consistent with the Company's agreement with such third party.

3.     *Inventions.*

A.     *Inventions Retained and Licensed.* I have attached hereto, as <u>Exhibit A</u>, a list describing all inventions, original works of authorship, developments, improvements, and trade secrets which were made by me prior to my employment with the Company (collectively referred to as "Prior Inventions"), which belong to me, which relate to the Company's proposed business, products or research and development, and which are not assigned to the Company hereunder; or, if no such list is attached, I represent that there are no such Prior Inventions. If in the course of my employment with the Company, I incorporate into a Company product, process or service a Prior Invention owned by me or in which I have an interest, I hereby grant to the Company a nonexclusive, royalty-free, fully paid-up, irrevocable, perpetual, worldwide license to make, have made, modify, use and sell such Prior Invention as part of or in connection with such product, process or service, and to practice any method related thereto.

B.     *Assignment of Inventions.* I agree that I will promptly make full written disclosure to the Company, will hold in trust for the sole right and benefit of the Company, and hereby assign to the Company, or its designee, all my right, title, and interest in and to any and all inventions, original works of authorship, developments, concepts, improvements, designs, discoveries, ideas, trademarks or trade secrets, whether or not patentable or registrable under copyright or similar laws, which I may solely or jointly conceive or develop or reduce to practice, or cause to be conceived or developed or reduced to practice, during the period of time I am in the employ of the Company (collectively referred to as "Inventions"), except as provided in **Section 3.F** below. I further acknowledge that all original works of authorship which are made by me (solely or jointly with others) within the scope of and during the period of my employment with the Company and which are protectible by copyright are "works made for hire," as that term is defined in the United States Copyright Act. I understand and agree that the decision whether or not to commercialize or market any invention developed by me solely or jointly with others is within the Company's sole discretion and for the Company's sole benefit and that no royalty will be due to me as a result of the Company's efforts to commercialize or market any such invention.

C.     *Inventions Assigned to the United States.* I agree to assign to the United States government all my right, title, and interest in and to any and all Inventions whenever such full title is required to be in the United States by a contract between the Company and the United States or any of its agencies.

D.     *Maintenance of Records.* I agree to keep and maintain adequate and current written records of all Inventions made by me (solely or jointly with others) during the term of my employment with the Company. The records will be in the form of notes, sketches, drawings, and

any other format that may be specified by the Company. The records will be available to and remain the sole property of the Company at all times.

E.   *Patent and Copyright Registrations.* I agree to assist the Company, or its designee, at the Company's expense, in every proper way to secure the Company's rights in the Inventions and any copyrights, patents, mask work rights or other intellectual property rights relating thereto in any and all countries, including the disclosure to the Company of all pertinent information and data with respect thereto, the execution of all applications, specifications, oaths, assignments and all other instruments which the Company shall deem necessary in order to apply for and obtain such rights and in order to assign and convey to the Company, its successors, assigns, and nominees the sole and exclusive rights, title and interest in and to such Inventions, and any copyrights, patents, mask work rights or other intellectual property rights relating thereto. I further agree that my obligation to execute or cause to be executed, when it is in my power to do so, any such instrument or papers shall continue after the termination of this Agreement. If the Company is unable because of my mental or physical incapacity or for any other reason to secure my signature to apply for or to pursue any application for any United States or foreign patents or copyright registrations covering Inventions or original works of authorship assigned to the Company as above, then I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents as my agent and attorney in fact, to act for and in my behalf and stead to execute and file any such applications and to do all other lawfully permitted acts to further the prosecution and issuance of letters patent or copyright registrations thereon with the same legal force and effect as if executed by me.

F.   *Exception to Assignments.* I understand that the provisions of this Agreement requiring assignment of Inventions to the Company do not apply to any invention which qualifies fully under the provisions of California Labor Code Section 2870 (attached hereto as <u>Exhibit B</u>). I will advise the Company promptly in writing of any inventions that I believe meet the criteria in California Labor Code Section 2870 and not otherwise disclosed on <u>Exhibit A</u>.

4.   *Conflicting Employment.*

I agree that, during the term of my employment with the Company, I will not engage in any other employment, occupation or consulting directly related to the business in which the Company is now involved or becomes involved during the term of my employment, nor will I engage in any other activities that conflict with my obligations to the Company.

5.   *Returning Company Documents.* I agree that, at the time of leaving the employ of the Company, I will deliver to the Company (and will not keep in my possession, recreate or deliver to anyone else) any and all devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings blueprints, sketches, materials, equipment, other documents or property, or reproductions of any aforementioned items developed by me pursuant to my employment with the Company or otherwise belonging to the Company, its successors or assigns, including, without limitation, those records maintained pursuant to **paragraph 3.D**. In the event of the termination of my employment, I agree to sign and deliver the "Termination Certification" attached hereto as <u>Exhibit C</u>.

6. *Notification of New Employer.* In the event that I leave the employ of the Company, I hereby grant consent to notification by the Company to my new employer about my rights and obligations under this Agreement.

7. *Solicitation of Employees.* I agree that for a period of twelve (12) months immediately following the termination of my relationship with the Company for any reason, whether with or without cause, I shall not either directly or indirectly solicit, induce, recruit or encourage any of the Company's employees to leave their employment, or take away such employees, or attempt to solicit, induce, recruit, encourage or take away employees of the Company, either for myself or for any other person or entity.

8. *Representations.* I agree to execute any proper oath or verify any proper document required to carry out the terms of this Agreement. I represent that my performance of all the terms of this Agreement will not breach any agreement to keep in confidence proprietary information acquired by me in confidence or in trust prior to my employment by the Company. I hereby represent and warrant that I have not entered into, and I will not enter into, any oral or written agreement in conflict herewith.

9. *Arbitration and Equitable Relief.*

A. *Arbitration.* IN CONSIDERATION OF MY EMPLOYMENT WITH THE COMPANY, ITS PROMISE TO ARBITRATE ALL EMPLOYMENT-RELATED DISPUTES AND MY RECEIPT OF THE COMPENSATION, PAY RAISES AND OTHER BENEFITS PAID TO ME BY THE COMPANY, AT PRESENT AND IN THE FUTURE, I AGREE THAT ANY AND ALL CONTROVERSIES, CLAIMS, OR DISPUTES WITH ANYONE (INCLUDING THE COMPANY AND ANY EMPLOYEE, OFFICER, DIRECTOR, SHAREHOLDER OR BENEFIT PLAN OF THE COMPANY IN THEIR CAPACITY AS SUCH OR OTHERWISE) ARISING OUT OF, RELATING TO, OR RESULTING FROM MY EMPLOYMENT WITH THE COMPANY OR THE TERMINATION OF MY EMPLOYMENT WITH THE COMPANY, INCLUDING ANY BREACH OF THIS AGREEMENT, SHALL BE SUBJECT TO BINDING ARBITRATION UNDER THE ARBITRATION RULES SET FORTH IN CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 1280 THROUGH 1294.2, INCLUDING SECTION 1283.05 (THE "RULES") AND PURSUANT TO CALIFORNIA LAW. DISPUTES WHICH I AGREE TO ARBITRATE, AND THEREBY AGREE TO WAIVE ANY RIGHT TO A TRIAL BY JURY, INCLUDE ANY STATUTORY CLAIMS UNDER STATE OR FEDERAL LAW, INCLUDING, BUT NOT LIMITED TO, CLAIMS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, THE AMERICANS WITH DISABILITIES ACT OF 1990, THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967, THE OLDER WORKERS BENEFIT PROTECTION ACT, THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT, THE CALIFORNIA LABOR CODE, CLAIMS OF HARASSMENT, DISCRIMINATION OR WRONGFUL TERMINATION AND ANY STATUTORY CLAIMS. I FURTHER UNDERSTAND THAT THIS AGREEMENT TO ARBITRATE ALSO APPLIES TO ANY DISPUTES THAT THE COMPANY MAY HAVE WITH ME.

B. *Procedure.* I AGREE THAT ANY ARBITRATION WILL BE ADMINISTERED BY THE AMERICAN ARBITRATION ASSOCIATION ("AAA") AND THAT

THE NEUTRAL ARBITRATOR WILL BE SELECTED IN A MANNER CONSISTENT WITH ITS NATIONAL RULES FOR THE RESOLUTION OF EMPLOYMENT DISPUTES. I AGREE THAT THE ARBITRATOR SHALL HAVE THE POWER TO DECIDE ANY MOTIONS BROUGHT BY ANY PARTY TO THE ARBITRATION, INCLUDING MOTIONS FOR SUMMARY JUDGMENT AND/OR ADJUDICATION AND MOTIONS TO DISMISS AND DEMURRERS, PRIOR TO ANY ARBITRATION HEARING. I ALSO AGREE THAT THE ARBITRATOR SHALL HAVE THE POWER TO AWARD ANY REMEDIES, INCLUDING ATTORNEYS' FEES AND COSTS, AVAILABLE UNDER APPLICABLE LAW. I UNDERSTAND THE COMPANY WILL PAY FOR ANY ADMINISTRATIVE OR HEARING FEES CHARGED BY THE ARBITRATOR OR AAA EXCEPT THAT I SHALL PAY THE FIRST $125.00 OF ANY FILING FEES ASSOCIATED WITH ANY ARBITRATION I INITIATE. I AGREE THAT THE ARBITRATOR SHALL ADMINISTER AND CONDUCT ANY ARBITRATION IN A MANNER CONSISTENT WITH THE RULES AND THAT TO THE EXTENT THAT THE AAA'S NATIONAL RULES FOR THE RESOLUTION OF EMPLOYMENT DISPUTES CONFLICT WITH THE RULES, THE RULES SHALL TAKE PRECEDENCE. I AGREE THAT THE DECISION OF THE ARBITRATOR SHALL BE IN WRITING.

C.     *Remedy.* EXCEPT AS PROVIDED BY THE RULES AND THIS AGREEMENT, ARBITRATION SHALL BE THE SOLE, EXCLUSIVE AND FINAL REMEDY FOR ANY DISPUTE BETWEEN ME AND THE COMPANY.  ACCORDINGLY, EXCEPT AS PROVIDED FOR BY THE RULES AND THIS AGREEMENT, NEITHER I NOR THE COMPANY WILL BE PERMITTED TO PURSUE COURT ACTION REGARDING CLAIMS THAT ARE SUBJECT TO ARBITRATION. NOTWITHSTANDING, THE ARBITRATOR WILL NOT HAVE THE AUTHORITY TO DISREGARD OR REFUSE TO ENFORCE ANY LAWFUL COMPANY POLICY, AND THE ARBITRATOR SHALL NOT ORDER OR REQUIRE THE COMPANY TO ADOPT A POLICY NOT OTHERWISE REQUIRED BY LAW WHICH THE COMPANY HAS NOT ADOPTED.

D.     *Availability of Injunctive Relief.* BOTH PARTIES AGREE THAT ANY PARTY MAY PETITION A COURT FOR INJUNCTIVE RELIEF AS PERMITTED BY THE RULES INCLUDING, BUT NOT LIMITED TO, WHERE EITHER PARTY ALLEGES OR CLAIMS A VIOLATION OF THE AT-WILL EMPLOYMENT, PROPRIETARY INFORMATION, INVENTION ASSIGNMENT AND ARBITRATION AGREEMENT BETWEEN ME AND THE COMPANY OR ANY OTHER AGREEMENT REGARDING TRADE SECRETS, CONFIDENTIAL INFORMATION, NONSOLICITATION OR LABOR CODE §2870. BOTH PARTIES UNDERSTAND THAT ANY BREACH OR THREATENED BREACH OF SUCH AN AGREEMENT WILL CAUSE IRREPARABLE INJURY AND THAT MONEY DAMAGES WILL NOT PROVIDE AN ADEQUATE REMEDY THEREFOR AND BOTH PARTIES HEREBY CONSENT TO THE ISSUANCE OF AN INJUNCTION. IN THE EVENT EITHER PARTY SEEKS INJUNCTIVE RELIEF, THE PREVAILING PARTY SHALL BE ENTITLED TO RECOVER REASONABLE COSTS AND ATTORNEYS FEES.

E.     *Administrative Relief.* I UNDERSTAND THAT THIS AGREEMENT DOES NOT PROHIBIT ME FROM PURSUING AN ADMINISTRATIVE CLAIM WITH A LOCAL, STATE OR FEDERAL ADMINISTRATIVE BODY SUCH AS THE DEPARTMENT OF FAIR

EMPLOYMENT AND HOUSING, THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION OR THE WORKERS' COMPENSATION BOARD.  THIS AGREEMENT DOES, HOWEVER, PRECLUDE ME FROM PURSUING COURT ACTION REGARDING ANY SUCH CLAIM.

   F. *Voluntary Nature of Agreement.*  I ACKNOWLEDGE AND AGREE THAT I AM EXECUTING THIS AGREEMENT VOLUNTARILY AND WITHOUT ANY DURESS OR UNDUE INFLUENCE BY THE COMPANY OR ANYONE ELSE.  I FURTHER ACKNOWLEDGE AND AGREE THAT I HAVE CAREFULLY READ THIS AGREEMENT AND THAT I HAVE ASKED ANY QUESTIONS NEEDED FOR ME TO UNDERSTAND THE TERMS, CONSEQUENCES AND BINDING EFFECT OF THIS AGREEMENT AND FULLY UNDERSTAND IT, INCLUDING THAT *I AM WAIVING MY RIGHT TO A JURY TRIAL.* FINALLY, I AGREE THAT I HAVE BEEN PROVIDED AN OPPORTUNITY TO SEEK THE ADVICE OF AN ATTORNEY OF MY CHOICE BEFORE SIGNING THIS AGREEMENT.

   10. *General Provisions.*

   A. *Governing Law; Consent to Personal Jurisdiction.*  This Agreement will be governed by the laws of the State of California.  I hereby expressly consent to the personal jurisdiction of the state and federal courts located in California for any lawsuit filed there against me by the Company arising from or relating to this Agreement.

   B. *Entire Agreement.*  This Agreement sets forth the entire agreement and understanding between the Company and me relating to the subject matter herein and supersedes all prior discussions or representations between us including, but not limited to, any representations made during my interview(s) or relocation negotiations, whether written or oral.  No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the President of the Company and me.  Any subsequent change or changes in my duties, salary or compensation will not affect the validity or scope of this Agreement.

C.    *Severability.*  If one or more of the provisions in this Agreement are deemed void by law, then the remaining provisions will continue in full force and effect.

D.    *Successors and Assigns.*  This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Company, its successors, and its assigns.

_____
Signature

Jacquline Eldred-Smith
Name of Employee (typed or printed)

Witness:

_____
Signature

Brian Mullin
Name (typed or printed)

**Exhibit A**

### LIST OF PRIOR INVENTIONS
### AND ORIGINAL WORKS OF AUTHORSHIP

| Title | Date | Identifying Number or Brief Description |
|-------|------|----------------------------------------|
|       |      |                                        |

✓ No inventions or improvements

___ Additional Sheets Attached

Signature of Employee: _____

Print Name of Employee: Jacquline Eldred Smith

Date: 4|19|06

W:\Human Resources\Forms\PIIA At will employment and Arbitration 7 25 05.DOC (17533)

**Exhibit B**

## CALIFORNIA LABOR CODE SECTION 2870
## INVENTION ON OWN TIME-EXEMPTION FROM AGREEMENT

"(a)    Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either:

(1)    Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or

(2)    Result from any work performed by the employee for the employer.

(b)    To the extent a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable."

**Exhibit C**

**YellowPages.com LLC**

**TERMINATION CERTIFICATION**

This is to certify that I do not have in my possession, nor have I failed to return, any devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, equipment, other documents or property, or reproductions of any aforementioned items belonging to **YellowPages.com LLC**, its parents, subsidiaries, affiliates, successors or assigns (together, the "Company").

I further certify that I have complied with all the terms of the Company's Proprietary Information, Invention Assignment and Arbitration Agreement signed by me, including the reporting of any inventions and original works of authorship (as defined therein), conceived or made by me (solely or jointly with others) covered by that agreement.

I further agree that, in compliance with the Employment, Proprietary Information, Invention Assignment, and Arbitration  Agreement, I will preserve as confidential all trade secrets, confidential knowledge, data or other proprietary information relating to products, processes, know-how, designs, formulas, developmental or experimental work, computer programs, data bases, other original works of authorship, customer lists, business plans, financial information or other subject matter pertaining to any business of the Company or any of its employees, clients, consultants or licensees.

I further agree that for twelve (12) months from this date, I will not solicit, induce, recruit or encourage any of the Company's employees to leave their employment.

Date:  _4/19/06_____

_____
(Employee's Signature)

_Jacquline Eldred-Smith_
(Type/Print Employee's Name)

**<u>EXHIBIT B</u>**

7029394969
06/14/2009  19:52   7029394969          HR  YELLOWPAGES          PAGE   01/10
06/15/2009  07:33   8182417210          YELLOWPAGES              PAGE   01/10

# YELLOWPAGES.COM LLC
## AT WILL EMPLOYMENT, PROPRIETARY INFORMATION,
## INVENTION ASSIGNMENT,
## AND ARBITRATION AGREEMENT

As a condition of my employment with YellowPages.com LLC, its subsidiaries, affiliates, successors or assigns (together the "Company"), and in consideration of my employment with the Company and my receipt of the compensation now and hereafter paid to me by Company, I agree to the following, effective _Nov 13_, 2006:

1.   *At-Will Employment.*

I UNDERSTAND AND ACKNOWLEDGE THAT MY EMPLOYMENT WITH THE COMPANY IS FOR AN UNSPECIFIED DURATION AND CONSTITUTES "AT-WILL" EMPLOYMENT. I ALSO UNDERSTAND THAT ANY REPRESENTATION TO THE CONTRARY IS UNAUTHORIZED AND NOT VALID UNLESS OBTAINED IN WRITING AND SIGNED BY THE PRESIDENT OF THE COMPANY. I ACKNOWLEDGE THAT THIS EMPLOYMENT RELATIONSHIP MAY BE TERMINATED AT ANY TIME, WITH OR WITHOUT GOOD CAUSE OR FOR ANY OR NO CAUSE, AT THE OPTION EITHER OF THE COMPANY OR MYSELF, WITH OR WITHOUT NOTICE.

2.   *Confidential Information.*

A.   *Company Information.* I agree at all times during the term of my employment and thereafter, to hold in strictest confidence, and not to use, except for the benefit of the Company, or to disclose to any person, firm or corporation without written authorization of the Board of Directors of the Company, any Confidential Information of the Company, except under a non-disclosure agreement duly authorized and executed by the Company. I understand that "Confidential Information" or "Proprietary Information" means any non-public information that relates to the actual or anticipated business or research and development of the Company, technical data, trade secrets or know-how, including, but not limited to, research, product plans or other information regarding Company's products or services and markets therefor, customer lists and customers (including, but not limited to, customers of the Company on whom I called or with whom I became acquainted during the term of my employment), software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances or other business information. I further understand that Confidential Information does not include any of the foregoing items which have become publicly known and made generally available through no wrongful act of mine or of others who were under confidentiality obligations as to the item or items involved or improvements or new versions thereof.

B.   *Former Employer Information.* I agree that I will not, during my employment with the Company, improperly use or disclose any proprietary information or trade secrets of any former or concurrent employer or other person or entity and that I will not bring onto the premises of the Company any unpublished document or proprietary information belonging to any such employer, person or entity unless consented to in writing by such employer, person, or entity.

C.    *Third Party Information.*  I recognize that the Company has received and in the future will receive from third parties their confidential or proprietary information subject to a duty on the Company's part to maintain the confidentiality of such information and to use it only for certain limited purposes. I agree to hold all such confidential or proprietary information in the strictest confidence and not to disclose it to any person, firm or corporation or to use it except as necessary in carrying out my work for the Company consistent with the Company's agreement with such third party.

3.    *Inventions.*

A.    *Inventions Retained and Licensed.*  I have attached hereto, as Exhibit A, a list describing all inventions, original works of authorship, developments, improvements, and trade secrets which were made by me prior to my employment with the Company (collectively referred to as "Prior Inventions"), which belong to me, which relate to the Company's proposed business, products or research and development, and which are not assigned to the Company hereunder; or, if no such list is attached, I represent that there are no such Prior Inventions. If in the course of my employment with the Company, I incorporate into a Company product, process or service a Prior Invention owned by me or in which I have an interest, I hereby grant to the Company a nonexclusive, royalty-free, fully paid-up, irrevocable, perpetual, worldwide license to make, have made, modify, use and sell such Prior Invention as part of or in connection with such product, process or service, and to practice any method related thereto.

B.    *Assignment of Inventions.*  I agree that I will promptly make full written disclosure to the Company, will hold in trust for the sole right and benefit of the Company, and hereby assign to the Company, or its designee, all my right, title, and interest in and to any and all inventions, original works of authorship, developments, concepts, improvements, designs, discoveries, ideas, trademarks or trade secrets, whether or not patentable or registrable under copyright or similar laws, which I may solely or jointly conceive or develop or reduce to practice, or cause to be conceived or developed or reduced to practice, during the period of time I am in the employ of the Company (collectively referred to as "Inventions"), except as provided in **Section 3.F** below. I further acknowledge that all original works of authorship which are made by me (solely or jointly with others) within the scope of and during the period of my employment with the Company and which are protectible by copyright are "works made for hire," as that term is defined in the United States Copyright Act. I understand and agree that the decision whether or not to commercialize or market any invention developed by me solely or jointly with others is within the Company's sole discretion and for the Company's sole benefit and that no royalty will be due to me as a result of the Company's efforts to commercialize or market any such invention.

C.    *Inventions Assigned to the United States.*  I agree to assign to the United States government all my right, title, and interest in and to any and all Inventions whenever such full title is required to be in the United States by a contract between the Company and the United States or any of its agencies.

D.    *Maintenance of Records.*  I agree to keep and maintain adequate and current written records of all Inventions made by me (solely or jointly with others) during the term of my employment with the Company. The records will be in the form of notes, sketches, drawings, and

any other format that may be specified by the Company. The records will be available to and remain the sole property of the Company at all times.

E.    *Patent and Copyright Registrations.* I agree to assist the Company, or its designee, at the Company's expense, in every proper way to secure the Company's rights in the Inventions and any copyrights, patents, mask work rights or other intellectual property rights relating thereto in any and all countries, including the disclosure to the Company of all pertinent information and data with respect thereto, the execution of all applications, specifications, oaths, assignments and all other instruments which the Company shall deem necessary in order to apply for and obtain such rights and in order to assign and convey to the Company, its successors, assigns, and nominees the sole and exclusive rights, title and interest in and to such Inventions, and any copyrights, patents, mask work rights or other intellectual property rights relating thereto. I further agree that my obligation to execute or cause to be executed, when it is in my power to do so, any such instrument or papers shall continue after the termination of this Agreement. If the Company is unable because of my mental or physical incapacity or for any other reason to secure my signature to apply for or to pursue any application for any United States or foreign patents or copyright registrations covering Inventions or original works of authorship assigned to the Company as above, then I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents as my agent and attorney in fact, to act for and in my behalf and stead to execute and file any such applications and to do all other lawfully permitted acts to further the prosecution and issuance of letters patent or copyright registrations thereon with the same legal force and effect as if executed by me.

F.    *Exception to Assignments.* I understand that the provisions of this Agreement requiring assignment of Inventions to the Company do not apply to any invention which qualifies fully under the provisions of California Labor Code Section 2870 (attached hereto as <u>Exhibit B</u>). I will advise the Company promptly in writing of any inventions that I believe meet the criteria in California Labor Code Section 2870 and not otherwise disclosed on <u>Exhibit A</u>.

4.    *Conflicting Employment.*

I agree that, during the term of my employment with the Company, I will not engage in any other employment, occupation or consulting directly related to the business in which the Company is now involved or becomes involved during the term of my employment, nor will I engage in any other activities that conflict with my obligations to the Company.

5.    *Returning Company Documents.* I agree that, at the time of leaving the employ of the Company, I will deliver to the Company (and will not keep in my possession, recreate or deliver to anyone else) any and all devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings blueprints, sketches, materials, equipment, other documents or property, or reproductions of any aforementioned items developed by me pursuant to my employment with the Company or otherwise belonging to the Company, its successors or assigns, including, without limitation, those records maintained pursuant to **paragraph 3.D**. In the event of the termination of my employment, I agree to sign and deliver the "Termination Certification" attached hereto as <u>Exhibit C</u>.

6. *Notification of New Employer.* In the event that I leave the employ of the Company, I hereby grant consent to notification by the Company to my new employer about my rights and obligations under this Agreement.

7. *Solicitation of Employees.* I agree that for a period of twelve (12) months immediately following the termination of my relationship with the Company for any reason, whether with or without cause, I shall not either directly or indirectly solicit, induce, recruit or encourage any of the Company's employees to leave their employment, or take away such employees, or attempt to solicit, induce, recruit, encourage or take away employees of the Company, either for myself or for any other person or entity.

8. *Representations.* I agree to execute any proper oath or verify any proper document required to carry out the terms of this Agreement. I represent that my performance of all the terms of this Agreement will not breach any agreement to keep in confidence proprietary information acquired by me in confidence or in trust prior to my employment by the Company. I hereby represent and warrant that I have not entered into, and I will not enter into, any oral or written agreement in conflict herewith.

9. *Arbitration and Equitable Relief.*

A.    *Arbitration.* IN CONSIDERATION OF MY EMPLOYMENT WITH THE COMPANY, ITS PROMISE TO ARBITRATE ALL EMPLOYMENT-RELATED DISPUTES AND MY RECEIPT OF THE COMPENSATION, PAY RAISES AND OTHER BENEFITS PAID TO ME BY THE COMPANY, AT PRESENT AND IN THE FUTURE, I AGREE THAT ANY AND ALL CONTROVERSIES, CLAIMS, OR DISPUTES WITH ANYONE (INCLUDING THE COMPANY AND ANY EMPLOYEE, OFFICER, DIRECTOR, SHAREHOLDER OR BENEFIT PLAN OF THE COMPANY IN THEIR CAPACITY AS SUCH OR OTHERWISE) ARISING OUT OF, RELATING TO, OR RESULTING FROM MY EMPLOYMENT WITH THE COMPANY OR THE TERMINATION OF MY EMPLOYMENT WITH THE COMPANY, INCLUDING ANY BREACH OF THIS AGREEMENT, SHALL BE SUBJECT TO BINDING ARBITRATION UNDER THE ARBITRATION RULES SET FORTH IN CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 1280 THROUGH 1294.2, INCLUDING SECTION 1283.05 (THE "RULES") AND PURSUANT TO CALIFORNIA LAW. DISPUTES WHICH I AGREE TO ARBITRATE, AND THEREBY AGREE TO WAIVE ANY RIGHT TO A TRIAL BY JURY, INCLUDE ANY STATUTORY CLAIMS UNDER STATE OR FEDERAL LAW, INCLUDING, BUT NOT LIMITED TO, CLAIMS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, THE AMERICANS WITH DISABILITIES ACT OF 1990, THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967, THE OLDER WORKERS BENEFIT PROTECTION ACT, THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT, THE CALIFORNIA LABOR CODE, CLAIMS OF HARASSMENT, DISCRIMINATION OR WRONGFUL TERMINATION AND ANY STATUTORY CLAIMS. I FURTHER UNDERSTAND THAT THIS AGREEMENT TO ARBITRATE ALSO APPLIES TO ANY DISPUTES THAT THE COMPANY MAY HAVE WITH ME.

B.    *Procedure.* I AGREE THAT ANY ARBITRATION WILL BE ADMINISTERED BY THE AMERICAN ARBITRATION ASSOCIATION ("AAA") AND THAT

06/14/2009   19:52   7029394969                    HR YELLOWPAGES          PAGE   05/10
06/15/2009   07:33   8182417210                       YELLOWPAGES          PAGE   05/10

THE NEUTRAL ARBITRATOR WILL BE SELECTED IN A MANNER CONSISTENT WITH
ITS NATIONAL RULES FOR THE RESOLUTION OF EMPLOYMENT DISPUTES. I AGREE
THAT THE ARBITRATOR SHALL HAVE THE POWER TO DECIDE ANY MOTIONS
BROUGHT BY ANY PARTY TO THE ARBITRATION, INCLUDING MOTIONS FOR
SUMMARY JUDGMENT AND/OR ADJUDICATION AND MOTIONS TO DISMISS AND
DEMURRERS, PRIOR TO ANY ARBITRATION HEARING. I ALSO AGREE THAT THE
ARBITRATOR SHALL HAVE THE POWER TO AWARD ANY REMEDIES, INCLUDING
ATTORNEYS' FEES AND COSTS, AVAILABLE UNDER APPLICABLE LAW. I
UNDERSTAND THE COMPANY WILL PAY FOR ANY ADMINISTRATIVE OR HEARING
FEES CHARGED BY THE ARBITRATOR OR AAA EXCEPT THAT I SHALL PAY THE FIRST
$125.00 OF ANY FILING FEES ASSOCIATED WITH ANY ARBITRATION I INITIATE. I
AGREE THAT THE ARBITRATOR SHALL ADMINISTER AND CONDUCT ANY
ARBITRATION IN A MANNER CONSISTENT WITH THE RULES AND THAT TO THE
EXTENT THAT THE AAA'S NATIONAL RULES FOR THE RESOLUTION OF
EMPLOYMENT DISPUTES CONFLICT WITH THE RULES, THE RULES SHALL TAKE
PRECEDENCE. I AGREE THAT THE DECISION OF THE ARBITRATOR SHALL BE IN
WRITING.

C.   *Remedy.* EXCEPT AS PROVIDED BY THE RULES AND THIS
AGREEMENT, ARBITRATION SHALL BE THE SOLE, EXCLUSIVE AND FINAL REMEDY
FOR ANY DISPUTE BETWEEN ME AND THE COMPANY. ACCORDINGLY, EXCEPT AS
PROVIDED FOR BY THE RULES AND THIS AGREEMENT, NEITHER I NOR THE
COMPANY WILL BE PERMITTED TO PURSUE COURT ACTION REGARDING CLAIMS
THAT ARE SUBJECT TO ARBITRATION. NOTWITHSTANDING, THE ARBITRATOR WILL
NOT HAVE THE AUTHORITY TO DISREGARD OR REFUSE TO ENFORCE ANY LAWFUL
COMPANY POLICY, AND THE ARBITRATOR SHALL NOT ORDER OR REQUIRE THE
COMPANY TO ADOPT A POLICY NOT OTHERWISE REQUIRED BY LAW WHICH THE
COMPANY HAS NOT ADOPTED.

D.   *Availability of Injunctive Relief.* BOTH PARTIES AGREE THAT ANY
PARTY MAY PETITION A COURT FOR INJUNCTIVE RELIEF AS PERMITTED BY THE
RULES INCLUDING, BUT NOT LIMITED TO, WHERE EITHER PARTY ALLEGES OR
CLAIMS A VIOLATION OF THE AT-WILL EMPLOYMENT, PROPRIETARY
INFORMATION, INVENTION ASSIGNMENT AND ARBITRATION AGREEMENT
BETWEEN ME AND THE COMPANY OR ANY OTHER AGREEMENT REGARDING TRADE
SECRETS, CONFIDENTIAL INFORMATION, NONSOLICITATION OR LABOR CODE §2870.
BOTH PARTIES UNDERSTAND THAT ANY BREACH OR THREATENED BREACH OF
SUCH AN AGREEMENT WILL CAUSE IRREPARABLE INJURY AND THAT MONEY
DAMAGES WILL NOT PROVIDE AN ADEQUATE REMEDY THEREFOR AND BOTH
PARTIES HEREBY CONSENT TO THE ISSUANCE OF AN INJUNCTION. IN THE EVENT
EITHER PARTY SEEKS INJUNCTIVE RELIEF, THE PREVAILING PARTY SHALL BE
ENTITLED TO RECOVER REASONABLE COSTS AND ATTORNEYS FEES.

E.   *Administrative Relief.* I UNDERSTAND THAT THIS AGREEMENT DOES
NOT PROHIBIT ME FROM PURSUING AN ADMINISTRATIVE CLAIM WITH A LOCAL,
STATE OR FEDERAL ADMINISTRATIVE BODY SUCH AS THE DEPARTMENT OF FAIR

06/14/2009  19:52   7029394969                      HR YELLOWPAGES                  PAGE  05/10
06/15/2009  07:33   8182417210                        YELLOWPAGES                   PAGE  05/10

EMPLOYMENT AND HOUSING, THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION OR THE WORKERS' COMPENSATION BOARD. THIS AGREEMENT DOES, HOWEVER, PRECLUDE ME FROM PURSUING COURT ACTION REGARDING ANY SUCH CLAIM.

      F.    *Voluntary Nature of Agreement.*  I ACKNOWLEDGE AND AGREE THAT I AM EXECUTING THIS AGREEMENT VOLUNTARILY AND WITHOUT ANY DURESS OR UNDUE INFLUENCE BY THE COMPANY OR ANYONE ELSE.  I FURTHER ACKNOWLEDGE AND AGREE THAT I HAVE CAREFULLY READ THIS AGREEMENT AND THAT I HAVE ASKED ANY QUESTIONS NEEDED FOR ME TO UNDERSTAND THE TERMS, CONSEQUENCES AND BINDING EFFECT OF THIS AGREEMENT AND FULLY UNDERSTAND IT, INCLUDING THAT *I AM WAIVING MY RIGHT TO A JURY TRIAL.* FINALLY, I AGREE THAT I HAVE BEEN PROVIDED AN OPPORTUNITY TO SEEK THE ADVICE OF AN ATTORNEY OF MY CHOICE BEFORE SIGNING THIS AGREEMENT.

    10.   *General Provisions.*

      A.    *Governing Law; Consent to Personal Jurisdiction.*  This Agreement will be governed by the laws of the State of California.  I hereby expressly consent to the personal jurisdiction of the state and federal courts located in California for any lawsuit filed there against me by the Company arising from or relating to this Agreement.

      B.    *Entire Agreement.*  This Agreement sets forth the entire agreement and understanding between the Company and me relating to the subject matter herein, and supersedes all prior discussions or representations between us including, but not limited to, any representations made during my interview(s) or relocation negotiations, whether written or oral.  No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the President of the Company and me.  Any subsequent change or changes in my duties, salary or compensation will not affect the validity or scope of this Agreement.

C.    *Severability.* If one or more of the provisions in this Agreement are deemed void by law, then the remaining provisions will continue in full force and effect.

D.    *Successors and Assigns.* This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Company, its successors, and its assigns.

_____
Signature)

Bridget A. Ondick
Name of Employee (typed or printed)

Witness:

_____
Signature

Jodi Raskin
Name (typed or printed)

06/14/2009  19:52    7029394969          HR  YELLOWPAGES                    PAGE  08/10
06/15/2009  07:33    8182417210              YELLOWPAGES                    PAGE  08/10

**Exhibit A**

## LIST OF PRIOR INVENTIONS
## AND ORIGINAL WORKS OF AUTHORSHIP

| Title | Date | Identifying Number or Brief Description |
|-------|------|----------------------------------------|
|       |      |                                        |

✕  No inventions or improvements

___  Additional Sheets Attached

Signature of Employee: *Bridget S Ordick*

Print Name of Employee: *Bridget S Ordick*

Date: *Nov 12, 06*

W:\Human Resources\Forms\PIIA At will employment and Arbitration 7 25 05.DOC (17553)

06/14/2009  19:52    7029394969         HR YELLOWPAGES              PAGE  09/10
06/15/2009  07:33    8182417210         YELLOWPAGES                 PAGE  09/10

## Exhibit B

## CALIFORNIA LABOR CODE SECTION 2870
## INVENTION ON OWN TIME-EXEMPTION FROM AGREEMENT

"(a)   Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either:

(1)   Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or

(2)   Result from any work performed by the employee for the employer.

(b)   To the extent a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable."

**Exhibit C**

**YellowPages.com LLC**

**TERMINATION CERTIFICATION**

This is to certify that I do not have in my possession, nor have I failed to return, any devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, equipment, other documents or property, or reproductions of any aforementioned items belonging to **YellowPages.com LLC**, its parents, subsidiaries, affiliates, successors or assigns (together, the "Company").

I further certify that I have complied with all the terms of the Company's Proprietary Information, Invention Assignment and Arbitration Agreement signed by me, including the reporting of any inventions and original works of authorship (as defined therein), conceived or made by me (solely or jointly with others) covered by that agreement.

I further agree that, in compliance with the Employment, Proprietary Information, Invention Assignment, and Arbitration Agreement, I will preserve as confidential all trade secrets, confidential knowledge, data or other proprietary information relating to products, processes, know-how, designs, formulas, developmental or experimental work, computer programs, data bases, other original works of authorship, customer lists, business plans, financial information or other subject matter pertaining to any business of the Company or any of its employees, clients, consultants or licensees.

I further agree that for twelve (12) months from this date, I will not solicit, induce, recruit or encourage any of the Company's employees to leave their employment.

Date: _Nov 12, 06_

_(signature)_

(Employee's Signature)

_Bridget S Chodick_

(Type/Print Employee's Name)

W:\Human Resources\Forms\PIIA At will employment and Arbitration 7 25 05.DOC (17533)